## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Steve Salvador Ybarra,                              No. 25-cv-1948 (KMM/DTS)

     Plaintiff,

v.                                                                    **ORDER**

Legal Assistance of Dakota County;
Sharon Jones; Hon. David Lutz; Hon.
Tanya O'Brien; Hon. Dannia L. Edwards;
Lydia Clemens; Michelle Cathleen
Ybarra; Keith Ellison; and Jeff
Timmerman;

     Defendants.

---

This matter is before the Court on the State Defendants' Motion to Dismiss
(Dkt. 51) and the LADC Defendants' Motion to Dismiss (Dkt. 88), as well as numerous
motions and requests for relief by Plaintiff Steve Salvador Ybarra ("Mr. Ybarra" or
"Ybarra").[1] The Court considers these matters below, grants the motions to dismiss, and
dismisses this action with prejudice.

---

[1] The "State Defendants" include Lydia Clemens, David Lutz, Dannia Edwards,
Tanya O'Brien, Keith Ellison and Jeff Timmerman, and the "LADC Defendants" are
Legal Assistance of Dakota County and Sharon Jones. The list of other motions and
requests for relief covered by this Order includes the following: Emergency Motion for Temporary
Restraining Order and Preliminary Injunction (Dkt. 3); Emergency Equitable and
Constitutional Relief Due to Litigation-Induced Collapse (Dkt. 18); Motion for
Preliminary Injunction (Dkt. 23); Motion to Strike or Disregard Guardian Ad Litem
Report Due to Fraudulent Foundation and Evidentiary Discovery (Dkt. 30); Notice of
*(footnote continued on following page)*

# I.    BACKGROUND

This case is one of many filed by Mr. Ybarra concerning his ongoing divorce and child-custody dispute in Minnesota state court. This action, initiated on May 1, 2025, alleges a sweeping and audacious conspiracy between state actors, a private legal aid organization and its lawyer, and his ex-wife, Michelle Cathleen Ybarra,[2] to interfere with these proceedings in Dakota County court and secure a favorable judgment for her. He names First Judicial District of Minnesota Judges David Lutz, Tanya O'Brien, and Dannia Edwards ("the Judges"), the court-appointed Guardian ad Litem ("GAL") Lydia Clemens, Legal Assistance of Dakota County ("Legal Assistance") and its staff attorney Sharon Jones, and his ex-wife Michelle as part of this scheme. His Complaint includes a

---

Conflict and Motion for Federal Oversight (Dkt. 33); Motion to Disqualify the First Judicial District Bench (Dkt. 36); Motion for Sanctions under Federal Rule of Civil Procedure 11 against Defendant Sharon Jones (Dkt. 39); Motion to Disqualify the Minnesota Attorney General's Office as Counsel for Codefendants Due to Conflict of Interest and Ethical Incompatibility (Dkt. 41); Motion to Treat State Defendants' Opposition as Waiver of Damages Response (Dkt. 57); Motion for Default Judgment, Declaratory Custody Relief, and Judicial Finding of Fraudulent Entrenchment (Dkt. 59); Motion for Declaratory Relief Recognizing Void Custody Orders, Federal Protection of Parental Rights, and Declaration of Jurisdictional Fraud (Dkt. 61); Motion for Sanctions under Federal Rule of Civil Procedure 11 Against Defendant Jeffrey Timmerman (Dkt. 63); Request for Hearing on Motion for Declaratory Relief (Dkt. 66); Emergency Motion for Temporary Restraining Order and Preliminary Injunction Based on May 19, 2025 State Order Confirming Fraud Suppression, Structural Bias, and Federal Abstention Exception (Dkt. 71); and Motion to Strike Filings by Conflicted Defendant-Counsel Jeffrey Timmerman Pursuant to Fed. R. Civ. P. 12(f) (Dkt. 92).

[2] Though these proceedings are still ongoing, the state court has issued an order dissolving the Ybarras' marriage. *See Ybarra v. Ybarra*, No. 19AV-FA-24-839, Index 348 (Minn. Dist. Ct.). The state civil docket for that case is considered here because it is embraced by the pleadings and is also a matter of public record. *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

wide-ranging and exhaustive set of allegations, which the Court will not repeat here. Mr. Ybarra contends that these allegations amount to violations of his civil rights via 42 U.S.C. §§ 1983, 1985(3), and 1986, as well as violations the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(c), (d), claims he brings against all Defendants listed in his original Complaint. He sues the Judges and GAL Clemens in both their individual and official capacities. He seeks a declaration that the alleged acts are illegal and an injunction to pause or otherwise impede the state court proceedings; compensatory, treble, and punitive damages; costs and attorneys' fees; a criminal referral of Michelle Ybarra and Ms. Jones to federal prosecutors; and other relief, to include federal monitoring of the state proceedings.

On May 19, 2025, Mr. Ybarra filed an Amended Complaint seeking to add the Minnesota Attorney General Keith Ellison in his official capacity and Assistant Attorney General Jeff Timmerman in his official and personal capacity. (Dkt. 48.) The Amended Complaint does not restate the allegations made or Defendants named in his original Complaint.[3] At the time of the Amended Complaint's filing, Attorney General Ellison and Timmerman represented State Defendants in this action. (Dkt. 16.) Ybarra asserts claims

---

[3] Mr. Ybarra's Amended Complaint states that it "amends the original complaint . . . to include" Ellison and Timmerman. (Dkt. 48 at 2.) This violates Local Rule 15.1, which requires "any amended pleading must be complete in itself and must not incorporate by reference any prior pleading," creating an independent ground to strike the amended pleading. But even if the Court considers the Amended Complaint, as it does below, dismissal is warranted. For its forthcoming analysis, the Court refers to both the original Complaint and the Amended Complaint collectively as "Complaint" unless specified otherwise.

against Ellison and Timmerman under 42 U.S.C. §§ 1983, 1985(2), 1986 and alleges they are liable for their roles in a RICO conspiracy, 18 U.S.C. 1962(d). He seeks similar relief in his Amended Complaint, to further include disqualifying the Minnesota Attorney General's Office from representing State Defendants. Ellison and Timmerman continue to represent their co-State Defendants at the time of this Order.[4]

State Defendants filed their Motion to Dismiss on May 20 (Dkt. 51) to which Ybarra responded on May 21 (Dkt. 73). LADC Defendants filed their Motion to Dismiss on May 23 (Dkt. 88) and Ybarra responded on May 27 (Dkt. 95). LADC Defendants replied on June 9. (Dkt. 99.) State Defendants did not file a reply. Michelle Ybarra has not made an appearance in this case.

Due to the volume of Mr. Ybarra's filings, the Court stayed this case on May 23, 2025 pending the disposition of these motions to dismiss. (Dkt. 86 at 2 ¶ 1.)

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of

---

[4] Two days after filing his Amended Complaint. Mr. Ybarra filed a "First Amended Complaint Supplemental Claims Under 42 U.S.C. § 1983 and § 1986." (Dkt. 70.) This filing violates Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15.1, and the Court will not consider it.

the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In applying this standard, the Court must assume the facts in the complaint to be true and

take all reasonable inferences from those facts in the light most favorable to the plaintiff.

*Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as

true any wholly conclusory allegations or legal conclusions that the plaintiff draws from

the facts alleged. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

### III.    DISCUSSION

**A.    Requests for Injunctive and Declaratory Relief**

As an initial matter, Ybarra's claims for declaratory and injunctive relief—as well

as his various motions and requests seeking some form of the same—run into *Younger*

abstention.[5] *See Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* abstention doctrine

"requires that federal courts 'abstain from exercising their jurisdiction if (1) there is an

ongoing state proceeding, (2) that implicates important state interests, and (3) that

provides an adequate opportunity to raise any relevant federal questions.'" *Arseneau v.*

*Pudlowski*, 110 F.4th 1114, 1117 (8th Cir. 2024) (quoting *Tony Alamo Christian*

*Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012)). In such cases, "principles of

---

[5] This should not serve as a surprise to Mr. Ybarra, as the prospective relief sought in two of his previous cases—*Ybarra v. Ybarra*, No. 25-cv-894 (KMM/DJF) and *Ybarra v. Lutz, et al.*, 25-cv-938 (KMM/DJF)—have been dismissed via *Younger*. *See Ybarra v. Ybarra*, No. 25-cv-894 (KMM/DJF), 2025 WL 1024327 (D. Minn. Apr. 7, 2025).

comity and federalism preclude federal actions seeking injunctive or declaratory relief." *Tony Alamo Christian Ministries*, 664 F.3d at 1249.

This case satisfies these three *Younger* factors. The Ybarras' divorce and child-custody proceedings are ongoing.[6] *See Ybarra v. Ybarra*, No. 19AV-FA-24-839 (Minn. Dist. Ct.). Issues of divorce and child custody implicate important state interests, particularly Minnesota's interest in domestic relations, making abstention "particularly appropriate." *Carlson v. Cnty. of Ramsey*, No. 16-cv-765 (SRN/BRT), 2016 WL 3352196, at *6 (D. Minn. June 15, 2016) (collecting cases). And the state proceedings provide Mr. Ybarra an adequate venue to address the concerns he raises here, as he describes throughout his filings his active litigation of similar issues before the state court. *Id.* (collecting cases). As such, the Court dismisses Mr. Ybarra's claims against all Defendants[7] insofar as he seeks declaratory and injunctive relief that would impact the state proceedings and denies any of his additional motions or requests to the extent they

---

[6] In fact, it appears the proceedings concluded in July 2025, before Mr. Ybarra reopened them in September.

[7] The Court also dismisses these claims for relief against Michelle Ybarra sua sponte. *See Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 676 (8th Cir. 2013) (affirming the district court's determination that *Younger* abstention, which the district court raised sua sponte, was warranted); *see also Rubbelke v. Zarembinski*, No. 23-cv-707 (PJS/ECW), 2023 WL 3094371, at *2 & n.2 (D. Minn. Apr. 26, 2023) (considering whether the court's jurisdiction is affected by the *Younger* doctrine).

6

seek the same.[8] S*ee also Ybarra*, 2025 WL 1024327, at *2; *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018) (applying *Younger* to temporary custody proceedings in South Dakota) (citing *Moore v. Sims*, 442 U.S. 415, 423, 435 (1979)); *Tony Alamo*, 664 F.3d 1245, 1249 (8th Cir. 2012) ("[T]here is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of the [*Younger*] doctrine."); *Miller v. Macone*, No. 25-cv-1396 (PJS/JFD), 2025 WL 1249692, at *2 (D. Minn. Apr. 30, 2025) (finding that ongoing child-custody and child-support proceedings were the "kinds of state proceedings . . . that federal courts typically avoid under *Younger*"); *Kedrowski v. Madden*, No. 18-cv-2573 (WMW/SER), 2019 WL 4016168, at *2 (D. Minn. Aug. 26, 2019) (applying *Younger* to claims related to divorce proceeding); *Evens v. Gusinsky*, No. 5:22-cv-5054-CBK, 2022 WL 2981649, at *3 (D.S.D. July 28, 2022) (same), *aff'd*, No. 22-2970, 2022 WL 19078143 (8th Cir. Nov. 1, 2022).

---

[8] This includes denying in full or in part the following to the extent they ask this Court to interfere with the underlying state proceedings: the Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 3); Emergency Equitable and Constitutional Relief Due to Litigation-Induced Collapse (Dkt. 18); Motion for Preliminary Injunction (Dkt. 23); Motion to Strike or Disregard Guardian Ad Litem Report Due to Fraudulent Foundation and Evidentiary Discovery (Dkt. 30); Notice of Conflict and Motion for Federal Oversight (Dkt. 33); Motion to Disqualify the First Judicial District Bench (Dkt. 36); Motion for Default Judgment, Declaratory Custody Relief, and Judicial Finding of Fraudulent Entrenchment (Dkt. 59); Motion for Declaratory Relief Recognizing Void Custody Orders, Federal Protection of Parental Rights, and Declaration of Jurisdictional Fraud (Dkt. 61); and Emergency Motion for Temporary Restraining Order and Preliminary Injunction Based on May 19, 2025 State Order Confirming Fraud Suppression, Structural Bias, and Federal Abstention Exception (Dkt. 71). Mr. Ybarra's Request for Hearing on Motion for Declaratory Relief (Dkt. 66) is denied as moot.

Although ordinarily a dismissal under *Younger* is without prejudice because it involves a federal court's subject-matter jurisdiction, under the circumstances of this case, the Court dismisses Mr. Ybarra's claims for injunctive and declaratory relief with prejudice. The Court does so because each of Mr. Ybarra's claims also fail under a Rule 12(b)(6) analysis or are plainly frivolous, as discussed below. *See Brown v. Ark. Dep't of Hum. Servs.*, 452 F. App'x 690, 692–63 (8th Cir. 2011) (per curiam) (affirming the dismissal of parental rights claims via *Younger* abstention with prejudice where the plaintiff's factual allegations were severely deficient and some of the claims were barred by sovereign immunity); *Cassell v. Cnty. of Ramsey*, No. 10-cv-4981 (JRT/TNL), 2012 WL 928242, at *3 (D. Minn. Mar. 19, 2012) (ordering claims dismissed in part on *Younger* grounds to be dismissed with prejudice), *aff'd*, 490 F. App'x 842 (8th Cir. 2012).

## B.    State Defendants

In their motion to dismiss, State Defendants argue that Ybarra's claims must be dismissed because they are, in one form or another, immune from suit. The Court agrees, and the clarity with which Ybarra's claims are barred by various immunity doctrines render his claims against the State Defendants frivolous.

### 1.    Judges Lutz, O'Brien, and Edwards and GAL Clemens

First, the claims made against the Judges are dismissed because they are protected by judicial immunity. "A long line of [the Supreme] Court's precedents acknowledges [sic] that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) (collecting cases). Judicial immunity even extends to

acts that are malicious or corrupt. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Judicial

immunity can be bypassed only for actions taken outside of the judge's judicial capacity

or for judicial actions taken in the complete absence of jurisdiction. *Hamilton v. City of*

*Hayti*, 948 F.3d 921, 925 (8th Cir. 2020) (quoting *Mireles*, 502 U.S. at 11–12). Whether

an act is judicial depends on "the nature of the act itself*, i.e*., whether it is a function

normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they

dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362

(1978). The Judges are protected by judicial immunity here. While Mr. Ybarra states that

the Judges "acted outside [their] judicial capacity" in contributing to this alleged

conspiracy, the allegations he makes against them only relate to typical judicial acts, such

as "denying hearings" and "issuing protective orders." (Dkt. 1 at 5–6; *see id.* at 10–16.)

Even his more nefarious allegations, such as the Judges allegedly showing bias or failing

to disclose conflicts of interest, would not allow Ybarra to pierce judicial immunity.

Ybarra's claims against the Judges in both their official and personal capacities fall in the

face of judicial immunity. *See Greene v. Gassman*, No. 11-cv-0618 (PJS/TNL), 2012 WL

748374, at *4 (D. Minn. Mar. 6, 2012) ("[The] proposed personal-capacity claims against

the Judge Defendants are barred by absolute judicial immunity.") (citing *Glasspoole v.*

*Albertson*, 491 F.2d 1090, 1091 (8th Cir.1974)), *aff'd*, 489 F. App'x 997 (8th Cir. 2012).

     Guardian ad Litem Lydia Clemens is also immune from Ybarra's claims.

"[G]uardians ad litem are entitled to absolute immunity for acts that occurred within the

course of their court-appointed duties, even if their conduct was wrongful and illegal."

*Arseneau*, 110 F.4th at 1118. Like the Judges, the alleged acts taken by GAL Clemens are squarely within her court-appointed duties, making her immune from these claims. Mr. Ybarra fails to allege any acts taken by GAL Clemens that would fall outside of this protection. The claims against GAL Clemens in both her official and personal capacity must accordingly be dismissed. *See Emerson v. Cleveland*, No. 3:09-cv-36, 2011 WL 1103243, at *1 (D.N.D. Mar. 22, 2011) ("Serving as a guardian ad litem is an integral part of the judicial process and thus all claims against Kesler in her individual capacity are barred by the doctrine of absolute immunity.") (citing *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir.2005)), *aff'd sub nom. Emerson ex rel. G.A.E. v. Cleveland*, 438 F. App'x 525 (8th Cir. 2011); s*ee also Kaisamba-Kanneh v. Dakota Cnty. Dist. Ct.*, No. 22-cv-2661 (ECT/TNL), 2023 WL 1451561, at *3 (D. Minn. Feb. 1, 2023) ("The Dakota County District Court and the Guardian ad Litem Board are arms of the state, and as such, immune from damages claims under the Eleventh Amendment.") (collecting cases) (footnote omitted).

The same is true for Attorney General Keith Ellison and Assistant Attorney General Jeff Timmerman.[9] Ybarra's allegations focus specifically on Timmerman and his

---

[9] Mr. Ybarra brings a Motion to Disqualify the Minnesota Attorney General's Office as Counsel for Codefendants Due to Conflict of Interest and Ethical Incompatibility (Dkt. 41) on the grounds that Ellison and Timmerman, as named defendants, are barred from representing their co-defendants. But, amongst other issues with his motion, Ybarra lacks standing to seek their disqualification because he has not alleged any harm to him personally. *See O'Connor v. Jones*, 946 F.2d 1395, 1399–1400 (8th Cir. 1991); *In re*
(*footnote continued on following page*)

"ongoing participation in a litigation defense strategy," raising the concern that Timmerman omitted his prior employment for Dakota County. (Dkt. 48 at 2.) By previously holding this position, Ybarra alleges that Timmerman knew of this conspiracy, is tainted by it, and is now defending a "structurally tainted system." (*Id.* at 4.) Attorney General Ellison, as Timmerman's supervisor, was thus on notice of these issues and failed to act to prevent them or to remove Timmerman as counsel, Ybarra states.

Facially, these allegations appear to lack any legal merit. But the Court need not even look that far, as both Ellison and Timmerman are immune from these claims. *See Trobaugh v. Kelly*, 221 F.3d 1344 (8th Cir. 2000) (unpublished table decision) (dismissing lawsuit because attorney general was entitled to "absolute prosecutorial immunity") (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)); *Tweeton v. Frandrup*, No. 06-cv-1130 (PAM/JSM), 2006 WL 3627010, at *8 (D. Minn. Dec. 12, 2006) ("A government

---

*Centurylink Sales Pracs. & Sec. Litig.*, No. 17-md-2795 (MJD/KMM), 2020 WL 3513547, at *6 (D. Minn. June 29, 2020). Even if Ybarra could pursue this motion, the Court suspects Ellison and Timmerman were named as Defendants to this action in order to manufacture a conflict of interest, which is both inappropriate and would preclude their removal. *See Akins v. Knight*, 863 F.3d 1084, 1087 (8th Cir. 2017) ("Parties cannot be allowed to create the basis for recusal by their own deliberate actions." (parenthetically quoting *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990)); *cf. United States v. Ausler*, No. 4:01-cr-142 JLH, 2007 WL 1427717, at *7 (E.D. Ark. May 14, 2007) ("A defendant cannot manufacture a conflict of interest by asserting a wholly fictitious claim that would, in effect, disqualify every lawyer from representing him, prevent the court and the prosecutor from using his name, and thereby bring the proceedings against him to a halt.") (citing *Winfield v. Roper*, 460 F .3d 1026, 1040 (8th Cir. 2006)), *aff'd*, 545 F.3d 1101 (8th Cir. 2008). For these same reasons the Court also denies Ybarra's Motion to Strike Filings by Conflicted Defendant-Counsel Jeffrey Timmerman Pursuant to Fed. R. Civ. P. 12(f) (Dkt. 92) and Notice of Conflict and Motion for Federal Oversight (Dkt. 33) to the extent it seeks relief on these grounds.

attorney who defends a civil suit is entitled to absolute immunity.") (citing *Barrett v. United States*, 798 F.2d 565, 572–73 (2d Cir.1986) and *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir .1991)), *aff'd*, 287 F. App'x 541 (8th Cir. 2008); *Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988) ("[A] state assistant attorney general's function as a government advocate entitles him . . . to absolute immunity from suit for damages."); *Duvall v. Elnicki*, 107 F.3d 875, at *1 (8th Cir. 1997) (unpublished table decision) ("Elnicki was absolutely immune from suit for his advocacy functions as a state assistant attorney general . . . ."). This also includes the claims against Timmerman in his personal capacity. *See Nelson v. Ellison*, No. 23-cv-2122 (JRT/LIB), 2024 WL 714149, at *2 n.1 (D. Minn. Feb. 21, 2024) (concluding that claims against the attorney general in their individual capacity were also barred by immunity) (citing *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016)).[10]

Ybarra's claims for damages against State Defendants are accordingly dismissed with prejudice. *See Scheffler v. Trachy*, 821 F. App'x 648, 649 (8th Cir. 2020) (per

---

[10] Ybarra's Motion for Sanctions under Federal Rule of Civil Procedure 11 Against Defendant Jeffrey Timmerman (Dkt. 63) is likewise denied. Dispositively, Ybarra fails to allege any conduct by Timmerman that would be sanctionable under Rule 11(b). What is alleged constitutes little more than Mr. Timmerman litigating against Ybarra's motions, which he, of course, is allowed to do. In response, however, Mr. Timmerman raises real allegations of Mr. Ybarra's own sanctionable conduct, including Ybarra's potential misrepresentation to the Court when the Rule 11(c)(2) safe harbor notice was served, his citation to a case that, in the most charitable view, does not stand for the proposition it's cited for, and his false quotation from that case. (*See* Dkt. 62 at 3; Dkt. 63 at 3, 6 n.3 (citing "Main St. Legal Servs., Inc. v. Nat'l Sec. Council, 811 F. Supp. 2d 542 (E.D.N.Y. 2011)"); *see also* Dkt. 82 at 4 n.3.) Mr. Ybarra should be aware he too is bound by Rule 11. *See* Fed. R. Civ. P. 11(c)(1).

curiam) (affirming dismissal with prejudice due to absolute judicial immunity); *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2014 WL 460862, at *4 (D. Minn. Feb. 5, 2014) (dismissing claims with prejudice "on the grounds of absolute prosecutorial immunity"); *Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013) (stating claims barred by prosecutorial immunity or qualified immunity "must be dismissed with prejudice as they fail at the outset as a matter of law") (citing *Trendle v. Campbell*, 465 F. App'x 584, 585 (8th Cir. 2012) and *Moore v. Briggs*, 381 F.3d 771, 775 (8th Cir. 2004)).[11]

## C.    LADC Defendants

The Court turns to the LADC Defendants' Motion to Dismiss. LADC Defendants argue that Ybarra fails to sufficiently allege any of the claims he asserts against them and that the claims should be dismissed. The Court agrees and dismisses Ybarra's claims against LADC Defendants.

### 1.    Civil Rights Claims

Ybarra alleges LADC Defendants violated 42 U.S.C. §§ 1983, 1985(3), and 1986, each of which the Court discusses in turn. Ybarra alleges that LADC Defendants violated his Fourteenth Amendment rights to "familial association," due process, and equal protection, all encompassed by the Fourteenth Amendment. To establish a plausible 42 U.S.C. § 1983 claim, Ybarra must show that he has "been deprived of a constitutional

---

[11] Accordingly, his Motion to Treat State Defendants' Opposition as Waiver of Damages Response (Dkt. 57) is denied as moot.

right by a person acting under color of state law." *Sabri v. Whittier All.*, 833 F.3d 995, 999–1000 (8th Cir. 2016) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982)). A private party can be held liable under § 1983, but that liability attaches only if the party is "willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009); *see West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.") (quotation omitted). "A plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor regarding the violation of plaintiff's constitutional rights." *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1057–58 (D. Minn. 2013) (cleaned up) (quoting *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997)). "Mere allusion to such a conspiracy is insufficient; the conspiracy, or meeting of the minds, must be pleaded with specificity and factual support." *Id.* at 1058 (citing *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991)).

Ybarra claims in his Complaint that Ms. Jones is acting under color of law when participating in the alleged conspiracy. (Dkt. 1 at 7, 9.) But Ybarra's "allusion[s]" to Jones's involvement are insufficient to allege she was acting under color of law. *Magee*, 957 F. Supp. 2d at 1058. First, Ybarra fails to allege that Jones herself is exercising state power. The closest he gets is arguing that Jones is participating in "a federally funded

14

legal aid system," but then makes no specific allegation that Jones took money from a public source. He also concedes that her employer Legal Assistance does not receive government funds. (Dkt. 1 at 21 ("Legal Assistance of Dakota County, though it provides services to low-income residents, is not a government agency. It is funded primarily by private charitable organizations such as United Way, not by state or federal appropriations.").) Second, Ybarra provides no specific facts that even hint at a meeting of the minds between Jones and her state codefendants. The closest Ybarra comes is by alleging "collusion" or "coordination" between Jones and GAL Clemens, which, based on his alleged facts, appears to be nothing more than Clemons making recommendations to the court regarding the custody of Mr. Ybarra's children and Ms. Jones agreeing with them. (Dkt. 1 at 26–27.) As for allegations about the relationship between Jones and her judicial codefendants, the Complaint can most charitably be read to allege that Jones was *hiding* the alleged malfeasance from the Judges rather than organizing with them, a far cry from a meeting of the minds.

Ybarra's allegations regarding Legal Assistance are even more threadbare. Based on his concession regarding its funding, Ybarra seems to accept that Legal Assistance is a private party. (*See* Dkt. 1 at 21.) But beyond the fact that it employs Ms. Jones and has extremely tenuous associations with some of its other codefendants, Ybarra relies only on smoke to assert his claim. In total, the significant lack of allegations against LADC Defendants is clearly not enough to meet the heightened pleading threshold here.

Ybarra's § 1985(3) claims against LADC Defendants fail for the same reasons.[12] Section 1985(3) creates a cause of action for conspiracies to deprive persons of the equal protection, privileges, and immunities of federal law. 42 U.S.C. § 1985(3). To state a claim under § 1985(3), the plaintiff must allege:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). "[T]o state a claim for conspiracy under § 1985, a plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Kelly v. City of Omaha*, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quotation omitted). "This standard requires that allegations of a conspiracy be pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." *Id.* (quotation omitted and cleaned up). Section 1985(3) also requires the plaintiff to plead the existence of class-based discriminatory animus. *Lewis*, 908 F.2d at 324; *Griffin v.*

---

[12] The lack of state action on LADC Defendants' part may also be grounds to dismiss the § 1985(3) claim. While § 1985(3), "on its face, omits any requirement of state action," state action may still be required depending on "the nature of the underlying constitutional right which [the plaintiff] seeks to assert through the statute." *Lewis v. Pearson Found., Inc.*, 908 F.2d 318, 320–21 (8th Cir.), *on reh'g*, 917 F.2d 1077 (8th Cir. 1990). Fourteenth Amendment rights, which encompass the rights Ybarra asserts here, require state action. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). By failing to allege state action on LADC Defendants' part, his § 1985(3) claim would also fail.

*Breckenridge*, 403 U.S. 88, 102 (1971) ("The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.").

The Court need not look past the first element to find this claim faulty. As stated above, Ybarra has not sufficiently plead a conspiracy. Instead, he relies almost entirely on conclusory statements to suggest there is smoke, but he fails to allege with facts any underlying fire. Further, he did not make any allegations that the conspiracy was based on some class-based discriminatory animus. Nowhere does Ybarra allege a discriminatory intent on these grounds, nonetheless claim to be part of requisite class. Without particular and specific allegations, Ybarra cannot state a plausible § 1985(3) claim.

The same is true for his § 1986 claim. Section 1986 "provides a cause of action against 'every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of Title 42, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do so, if such wrongful act be committed.'" *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) (quoting 42 U.S.C. § 1986) (cleaned up). But the existence of a § 1986 claim is dependent on a predicate § 1985 violation; without a § 1985 violation, a § 1986 claim cannot survive. *See Jensen v. Henderson*, 315 F.3d 854, 863 (8th Cir. 2002) ("[Section 1986] claims are dependent upon a valid § 1985 claim."); *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) ("A cause of action under [§] 1986 is dependent on a valid claim under [§] 1985."). Because Ybarra cannot plead a viable § 1985(3) claim, his § 1986 claim must also be dismissed.

17

## 2.    RICO Claims

Ybarra also brings civil RICO claims against LADC Defendants, alleging violations of 18 U.S.C. §§ 1962(c) and (d). Under the RICO Act, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A civil RICO claim requires a plaintiff to allege that the defendant "engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *H&Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (cleaned up). "A RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 354 (8th Cir. 2011) (quoting 18 U.S.C. § 1961(4)). To assert the existence of an association-in-fact enterprise, the Supreme Court requires three criteria to be satisfied: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United* States, 556 U.S. 938, 946 (2009). However, acts taken "independently and without coordination" cannot establish the existence of an enterprise. *Id.* at 947 n.4; *see Target Corp. v. LCH Pavement Consultants, LLC*, No. 12-cv-1912 (JNE/JJK), 2013 WL 2470148, at *4 (D. Minn. June 7, 2013) ("[A]n association-in-fact enterprise requires more than parallel conduct; it requires relationships among those associated with the enterprise, and it

18

requires those associated with the enterprise to function as a unit, that they be put together to form a whole.") (citing *In re Ins. Brokerage Antitr. Litig.*, 618 F.3d 300, 374 (3d Cir. 2010)) (cleaned up).

To state a claim for relief, a plaintiff must allege each of the RICO elements, *Crest Constr. II*, 660 F.3d at 355, to each individual defendant, *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). In pleading a civil RICO claim, the plaintiff must satisfy the heightened particularity requirements of Federal Rule of Civil Procedure 9(b) when they allege a pattern of racketeering activity involving fraud. *Target Corp.*, 2013 WL 2470148, at *2 n.1.

Ybarra's § 1962(c) claim must be dismissed because, among other reasons, he has failed to plead a RICO enterprise. Like his civil rights claims, Mr. Ybarra simply lacks an adequate factual basis to plausibly assert a RICO enterprise existed here. In fact, Ybarra fails to plead any substantive relationship between LADC Defendants and most of their codefendants. For example, Ybarra's allegations connecting LADC Defendants to the Judges and GAL Clemens depends entirely on their participation in his legal proceedings. Outside of this setting, the only allegation creating any semblance of connective tissue between these Defendants is that Judge Lutz previously worked pro bono for Legal Assistance. (Dkt. 1 at 23, 41, 44.) But without any details about the duration or nature of that relationship, this statement is insufficient to allege the connection required to carry his burden here. Instead, what he has alleges in his Complaint looks exactly like an

independent and uncoordinated pattern of behaviors on the part of Defendants rather than a RICO operation.

Even assuming Ybarra alleged adequate relationships between Defendants, the activity Ybarra sees as nefarious amounts only to legal work, which generally does not qualify as predicate RICO conduct. *See UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1055 (8th Cir. 2024) ("In the absence of corruption[,] allegations of frivolous, fraudulent, or baseless litigation activities -- without more -- cannot constitute a RICO predicate act.") (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (collecting cases)) (cleaned up). Based on these deficiencies, Ybarra fails to plead a § 1962(c) claim.

And as Ybarra's § 1962(c) claim goes, so goes his § 1962(d) claim. A plaintiff cannot make out a § 1962(d) conspiracy claim where they failed to allege a RICO violation. *See UMB Bank*, 89 F.4th at 1057 ("To successfully allege conspiracy to violate RICO under 18 U.S.C. § 1962(d), UMB must first prove the elements of a RICO violation.") (quotation omitted); *In re Dividend Solar Fin., LLC*, No. 24-md-3128 (KMM/DTS), 2025 WL 2430484, at *15 (D. Minn. Aug. 22, 2025) ("[B]ecause the Court finds that Plaintiffs have failed to state a RICO claim, the RICO conspiracy claim also falls.") (citing *UMB Bank*, 89 F.4th at 1057).

In total, Ybarra's claims against LADC Defendants fail as a matter of law and are dismissed with prejudice.[13] *See Ahmed v. United States*, 147 F.3d 791, 797 (8th Cir. 1998) ("[A] dismissal for failure to state a claim upon which relief can be granted is an adjudication on the merits" allowing for dismissal with prejudice) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)).

## D.    Michelle Ybarra

While Michelle Ybarra has not filed a motion to dismiss (or otherwise appeared in any capacity), the Court nonetheless sua sponte dismisses this action against her both due to Mr. Ybarra's failure to prove service on Michelle Ybarra and due to the frivolousness of the claims against her.

First, the Court is not convinced that Mr. Ybarra properly served Michelle Ybarra. Federal Rule of Civil Procedure 4 requires in-person service of a summons and complaint, unless permission is given for service by other means. Fed. R. Civ. P. 4(e); *see* Minn. R. Civ. P 4.03(a). Service must be made by a non-party who is at least 18 years old, who is also required to provide an affidavit proving service was made. Fed. R. Civ. P. 4(c)(2), (*l*)(1). The plaintiff has the burden of establishing the validity of service of process. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas,*

---

[13] Ybarra also brings a motion for Rule 11 sanctions against Ms. Jones for filings she made in Minnesota state court. (Dkt. 39.) However, "[a] motion for sanctions under Rule 11 must be filed in the action and in the court where the sanctionable pleading was filed." *OarFin Distrib., Inc. v. Nora*, No. 11-cv-863 (PJS/AJB), 2012 WL 13028132, at *2 (D. Minn. July 16, 2012) (citing cases). Because Ybarra makes no allegations regarding filings in this case, his motion is denied.

*S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). Without proper service (or the defendant's waiver), a court lacks personal jurisdiction over that party. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) ("If a defendant is improperly served, a federal court lacks jurisdiction over the defendant.").

Mr. Ybarra filed a proof of service asserting that Michelle Ybarra was served on May 9, 2025 at "Great Clips Rosemount." (Dkt. 47.) Typically, this would be sufficient to prove service. But even a passing glance at this filing shows its deficiencies. On the proof of service form, where the server's name and signature are intended to be included, the name "Danielle" is handwritten in the openings, lacking any surname. Underneath, where the server's address is to be added, is written "Signed for Server" followed by what appears to be the signature of Mr. Ybarra. The cost of this person's service duties was $0. This proof of service stands in contrast to the proofs of service filed by Mr. Ybarra for the other Defendants, which name Courtney McDowall as the server, bear her signature, and, in all but one, list her payment for service as $50.[14] (Dkt. 15.)

---

[14] It appears from the proof of service that GAL Clemens may have been improperly served via email. (Dkt. 15 at 6.) However, Clemens waived any objection regarding the Court's lack of personal jurisdiction over her by filing her motion to dismiss without disputing it.

These facts lead the Court to conclude that Mr. Ybarra has not properly served Michelle Ybarra. Most notably, the server's affidavit as required by Rule 4(*l*)(1)—in the form of the proof of service—is deficient. The proof of service does not clearly identify the server and omits their signature. While an affidavit does not include many requirements, the lack of a full name or signature does not satisfy the otherwise straightforward filing. The Court's suspicion is also compounded by Mr. Ybarra's other actions and filings. For instance, nowhere in any other filings on the docket does the Court see that Mr. Ybarra stated or claimed to know Michelle Ybarra's physical address. While certainly not a requirement, this fact supports the conclusion that Mr. Ybarra does not—and has not—known where Michelle Ybarra is. Even further, Mr. Ybarra has attempted to serve his subsequent filings on Michelle Ybarra via her email address rather than a physical location, which constitutes improper service without her consent. The totality of evidence shows that Mr. Ybarra has not carried his burden to establish validity of serve on Michelle Ybarra.[15]

In addition to a failure to service, the Court dismisses the claims against Michelle Ybarra sua sponte as frivolous. *See Shaik v. Olmstead*, No. 24-cv-1898 (SRN/DLM), 2024 WL 3313982, at *1 (D. Minn. May 28, 2024) ("Federal district courts are permitted

---

[15] The Court must note its concern that Mr. Ybarra is attempting to pull a fast one in his campaign for retribution against his ex-wife. That will not fly. While there may be a plausible explanation for filing such a wholly deficient proof of service, Mr. Ybarra should again note that he too is bound, even as a pro se party, to Rule 11 and its requirements. And if he misrepresents information in documents he signs under penalty of perjury, he should equally expect consequences to that end.

to dismiss an action *sua sponte* where the action is found to be frivolous.") (citing *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 307–08 (1989) and *Porter v. Fox*, 99 F.3d 271, 273 (8th Cir. 1996)). "A claim is frivolous when 'it lacks an arguable basis either in law or in fact.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

The totality of Mr. Ybarra's allegations regarding Michelle Ybarra are that she misrepresented her finances on her legal aid application, that she was noncompliant with his discovery requests, and that she provided statements to GAL Clemens that Mr. Ybarra believes are not true. (Dkt. 1 at 17–18, 35–36.) His Complaint omits any allegations necessary to plausibly allege his civil rights claims, such as that she acted under color of state law, acted in concert with any state official, or even had a relationship with any of the state actors outside of those required by the state proceedings. Mr. Ybarra cannot make an argument for his RICO claim either given the total lack of allegations regarding both her relationships with her codefendants and the inability to allege two—nonetheless one—predicate criminal acts.

Because the Court finds Mr. Ybarra's claims against Michelle Ybarra are frivolous, his claims are dismissed with prejudice. *See Smith v. Conway*, No. 15-cv-4286 (JNE/SER), 2016 WL 4734385, at *10 n.19 (D. Minn. July 29, 2016) ("Due to the frivolous nature of Smith's claims, however, the Court concludes that no amount of repleading will cure the deficiencies in Smith's Complaint and therefore recommends dismissal with prejudice."), *R&R adopted sub nom. Smith v. M.P. Conway*, No. 15-cv-4286 (JNE/SER), 2016 WL 4727443, at *2 (D. Minn. Sept. 9, 2016) ("The Court further

agrees that Smith's Complaint is so 'deficient or defective' that no amount of re-pleading will cure its deficiencies and that the action should therefore be dismissed with prejudice.") (citing *Perez v. Bank of Am., N.A.*, No. 13-cv-2437 (JRT/JSM), 2014 WL 2611838, at *11 n.6 (D. Minn. June 10, 2014) (citing cases)); *see also Ahmed*, 147 F.3d at 797; *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021) ("It is well settled that a district court may dismiss a complaint with prejudice under Rule 12(b)(6) when amendment of a complaint would be futile.") (citation omitted).[16]

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendants Lydia Clemens, David Lutz, Dannia Edwards, Tanya O'Brien, Keith Ellison and Jeff Timmerman's Motion to Dismiss (Dkt. 51) is **GRANTED**;

2. Defendants Legal Assistance of Dakota County and Sharon Jones's Motion to Dismiss (Dkt. 88) is **GRANTED**;

3. Ybarra's claims against Defendant Michelle Ybarra are **DISMISSED** sua sponte;

4. Ybarra's outstanding motions and requests are each **DENIED** for lack of merit or as moot, including:

   a. Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 3);

   b. Emergency Equitable and Constitutional Relief Due to Litigation-Induced Collapse (Dkt. 18);

   c. Motion for Preliminary Injunction (Dkt. 23);

   d. Motion to Strike or Disregard Guardian Ad Litem Report Due to Fraudulent Foundation and Evidentiary Discovery (Dkt. 30);

---

[16] Any outstanding motion or request not already addressed is denied because the Complaint fails to state a claim for relief and is frivolous. (*See* Dkts. 3, 18, 39, 59, 66.)

     e.   Notice of Conflict and Motion for Federal Oversight (Dkt. 33);

     f.   Motion to Disqualify the First Judicial District Bench (Dkt. 36);

     g.   Motion for Sanctions under Federal Rule of Civil Procedure 11 against Defendant Sharon Jones (Dkt. 39);

     h.   Motion to Disqualify the Minnesota Attorney General's Office as Counsel for Codefendants Due to Conflict of Interest and Ethical Incompatibility (Dkt. 41);

     i.   Motion to Treat State Defendants' Opposition as Waiver of Damages Response (Dkt. 57);

     j.   Motion for Default Judgment, Declaratory Custody Relief, and Judicial Finding of Fraudulent Entrenchment (Dkt. 59);

     k.   Motion for Declaratory Relief Recognizing Void Custody Orders, Federal Protection of Parental Rights, and Declaration of Jurisdictional Fraud (Dkt. 61);

     l.   Motion for Sanctions under Federal Rule of Civil Procedure 11 Against Defendant Jeffrey Timmerman (Dkt. 63);

     m.   Request for Hearing on Motion for Declaratory Relief (Dkt. 66);

     n.   Emergency Motion for Temporary Restraining Order and Preliminary Injunction Based on May 19, 2025 State Order Confirming Fraud Suppression, Structural Bias, and Federal Abstention Exception (Dkt. 71);

     o.   Motion to Strike Filings by Conflicted Defendant-Counsel Jeffrey Timmerman Pursuant to Fed. R. Civ. P. 12(f) (Dkt. 92); and

5.   Plaintiff Steve Salvador Ybarra's Complaint (Dkt. 1) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 18, 2025               *s/Katherine Menendez*
                                         Katherine Menendez
                                         United States District Judge